## NEW YORK SUPREME COURT.

### In the Matter of THE UNITED STATES ROLLING STOCK COMPANY.

*Receiver — appointed in foreclosure suits brought in Ohio, Pennsylvania and this state — Jurisdiction of the courts of this state over receiver.*

The United States Rolling Stock Company, a corporation created by the laws of New York, entered into a contract with the receiver of the Atlantic and Great Western Railroad Company, a corporation created by the laws of New York, Ohio and Pennsylvania, for the lease, to the latter, of certain of its rolling stock. The contract was approved by the courts of New York, Ohio and Pennsylvania, by orders entered in

the respective actions in which said receiver was appointed. The same person was appointed receiver in the three states. In payment of the rental provided for in said contract, the receiver issued his certificates in the terms provided by said contract. They were not paid. The United States Rolling Stock Company then applied to this court for directions to the receiver to pay the same, and the application was opposed on the ground, among others, that the suits in New York and Pennsylvania were ancillary to the suit in Ohio, and that the relief prayed for could only be given in the suit in Ohio, which was the principal suit, and, on the further ground, that the payment of the certificates in the manner prescribed by the contract would prove injurious to the proper management of the road by the receiver.

*Held*, that both the objections were untenable.

*Held*, as to the first ground of objection, that the proceedings in each state were separate and independent so far as they related to the property within its limits, and that there was nothing in the proceedings of either by which the others could well deny the appeal of any party in interest for the maintenance and observation of the obligations arising under its sanction.

*Held*, as to the second ground of objection, that, even assuming the second objection to be well grounded in fact, yet, as long as the contract and the order confirming it remains in force, the stipulations and directions contained therein must be observed. That the inquiry is necessarily limited to the fact whether the receiver has become bound to pay what is now demanded, and that if he is, then, upon the application now presented, he must be required to perform the obligation which he found existing, and which remains in full force and effect.

*Erie Special Term, December,* 1878.

A FORMER application was presented to this court by the United States Rolling Stock Company, for the same relief as is prayed for in this (*See* 55 *How. Pr.,* 286). The present application is a renewal of the former, by leave of the court, and was opposed on the grounds stated above and noticed in the opinion.

*Clarence A. Seward, George B. Hibbard* and *Charles M. DaCosta,* for motion.

*R. P. Ranney* and *John George Milburn,* opposed.

DANIELS, *J.* — In the affidavits presented as the basis of this application and likewise those read to oppose it, and in the elaborate discussion carried on upon both sides, with so much discrimination and ability, by the learned counsel engaged, many incidental controversies and circumstances were involved which, in the decision to be made, will not require any further consideration than that already bestowed upon them. Divested of these collateral inquiries the facts which must be regarded of controlling importance, will be found in a reasonably narrow compass. And their indication must be followed in the disposition of the case, although they may not result in what expediency would suggest to be the most discreet management of the receiver's affairs. This subject has not been left open to consideration as it might be presented by ordinary circumstances, for the reason that he has controlled himself by positive stipulations and orders which cannot, on the mere ground of expediency, be disregarded. The application made for the direction of the court has not been placed on the ordinary obligations and duties appertaining to such a receivership, but upon his agreement in writing, sanctioned and confirmed at the instance of all the parties concerned by the courts of the three states of New York, Pennsylvania and Ohio, which states are traversed by the railway committed to his management. Upon this subject the action of the three courts was entirely harmonious, and it has at no time since then been in terms rescinded or in any respect qualified. The conclusion therefore would seem to be both plain and logical, that as long as the agreement and the orders confirming it remain as they now do, in force, that their stipulations and directions should be observed. If they have been improvidently made, they cannot, for that reason, be disregarded, although in a proper application that might be a very good reason for diminishing their stringency; neither can the obligations which have been assumed be discharged, for the reason that the present applicant may have received larger sums for the use of its property than careful

economy would have suggested from the Atlantic and Great Western Railway Company, previous to the time when its affairs were placed under the control and management of the receiver. Whether more was paid than the Rolling Stock Company ought in justice to have required, is not now the point requiring consideration. But that is necessarily limited to the inquiry whether the receiver has become bound to pay what is now demanded. If he has, then upon such an application as the present one, he must be required to perform the obligation which may be found existing, and which still remains in full force and effect.

It has been urged that this entire subject should, as a matter of comity, be remitted to the consideration of the courts of the state of Ohio. The chief reasons in support of this position are, that the principal part of the railway to which the duties and powers of the receiver relates is located within the limits of that state, and the impracticability of his separating and apportioning his accounts to so much of the line as is situated in each one of the three states. These arguments were brought to the attention of the court when this application was originally presented and which then failed because of the completeness of the answer made to it on its merits by the receiver. But it was then considered that these reasons, and the others of a less important nature presented in support of this position, would not justify this court in declining to hear and determine the application. If it had been a controversy arising under the laws and in the state and between citizens of Ohio, that disposition might not improperly be made of it. But such was not and is not its nature. The controversy has no such restricted locality, but it includes the affairs and management of the receiver in all of the three states. By the orders of the courts in these states the receiver was appointed and placed in possession of this line of railway, and he became accountable under the authority of these tribunals. And by the agreement presented his entire receipts and obligations were comprehended. This was severally

sanctioned by the orders of these three courts. Instead of one being the principal .and the others merely ancillary, they were all concurrent, and each expressed substantially the like authority. Jurisdiction and control were alike invoked, and alike conceded· by each one òf these tribunals. And there was nothing in the proceeding of either by which the others could well deny the appeal of any party in interest, for the maintenance and observance of the obligations arising under its sanction.

The view on the contrary which the circumstances would appear to most appropriately suggest is, that as the action of the courts was concurrent in producing and creating the obligation relied upon, either or each in turn may properly be required to direct its observance. This was the course pursued in procuring the sanction obtained for the agreement, and no very good reason could be assigned for declining to follow it in the present emergency. The applicant, too, is a corporation formed and existing under the laws of this state, and this court cannot consistently direct it elsewhere for that justice which its own authority over the circumstances has rendered it entirely competent and which seems to be its duty to dispense. For these reasons, as well as those assigned when the case was first presented, the merits of the dispute must be considered and determined.

On the preceding consideration of the case the application was held to be completely answered by the statement· made of his affairs by the receiver. But as that was asserted to be a mistake which his own accounts were claimed to afford the means of correcting leave was given for its renewal. And it is upon the statements found in those accounts that the hearing has now been renewed. It was at first urged that the receiver should be directed to pay the amount due to the applicant, and that involved an inquiry into his present ability to pay. That also was the theory of the application in its renewed form. But during the course of the argument so much of it was relinquished as contemplated a positive direction for

immediate payment because the funds with which it might have been made had been otherwise employed by the receiver. What is now insisted upon is that this fact of misappropriation shall be considered as an indication of the necessity for a direction that in future the receiver should perform the terms of the obligation entered into by him. It is not intended to be intimated that the receiver, in any view which may be taken of his action, has unlawfully applied any portion of the earnings of the railway. That has not been charged, and it has not been shown by any evidence brought into the case. But the charge is that he has devoted to the promotion of the other purposes of his trust, funds which the agreement made and the orders sanctioning it entitled the Rolling Stock Company to receive. And to sustain that view it has been shown that $250,000 were, during the existence of this obligation, applied to making permanent improvements, including the laying of a new rail on what is known as the Sharon railway. Also that upwards of $90,000 had been devoted to expenses of the Atlantic and Great Western Railway Company. Many, if not all, of these expenditures may, in themselves, have been entirely discreet and judicious. Certainly a great part of them seemed to be required to advance the business interests placed under his management. And their proceeds will soon, if they have not already, more than reimburse the expenditures made. But the fact nevertheless remains that the agreement and order made for the benefit of the Rolling Stock Company did not permit this to be done. And while the apparent propriety of the improvements made would induce the court to decline a direction which would require the receiver to pay the same moneys over to the applicant, it would be still insufficient to justify such an expression of approbation as might lead to a repetition of similar expenditures. What should be done in future cannot be determined from what has already taken place, and for that reason cannot be revoked. But that must be ascertained by the nature of

the obligation which has been made, and which the receiver should be directed to perform.

When this agreement was made the receiver seems to have been dependent upon the United States Rolling Stock Company for a large portion of the cars used in carrying on the business of the railway committed to his charge, or in order to secure a continuance of that use the agreement was entered into. By its terms it was provided that for the rolling stock used by him he should pay the compensation of fifteen per centum in monthly payments, on the tenth of each month, and all taxes on the property leased. The per centage was to be calculated on the original cost of the stock, of which the receiver had a correct statement. These monthly payments, it was agreed, should be paid, so far as the receiver should be able to do so, " from the funds coming to his hands as such receiver, by applying all the net income derived from the operation of the road, after paying current expenses of the receivership and operating the road, and the rental of leased lines, and interest on the old Ohio first mortgage " by the redemption of the monthly certificates to be issued by him for the amount of the several monthly payments to be made. These certificates, it was further agreed, should constitute a lien on the income of the road, etc., "embraced in the receivership, and likewise a lien prior to the mortgage bonds, secured by the mortgage to said Taylor & Dunphy, trustees, upon the railroad and other property embraced in such mortgage, and upon the proceeds of such sale if not previously paid from the income." This agreement was designed to include the period of two years, from the time of the receiver's appointment, but it was dependent for its binding effect upon the approval of the courts making that appointment.

Application for this approval was accordingly made and orders to that effect were entered in each of the courts. By the terms of the orders made in this state and the state of Ohio, to which also the same effect was given in the state of Pennsylvania, the contract was ratified and confirmed and it

was declared that "said receiver is hereby ordered to execute and issue to said United States Rolling Stock Company, in said report mentioned, his certificates for the rental past and to become due as in said contract and report set forth. Said receiver is also hereby directed to appropriate the funds coming into his hands as receiver to the payment of said certificates on a par with his other operating expenses, preferring thereto, in the order of payment, only claims for labor and service, rentals of leased lines by this court ordered to be paid and interest on the mortgage represented by Louis H. Meyer and Frederick Schuchardt, trustees." And it was further ordered that the certificates and indebtedness arising under the contract, so far as they remained unpaid during the receivership, should be a lien upon the mortgaged property and assets, and upon the proceeds of the sale thereof, superior to the lien of the mortgages represented by the plaintiffs, Frederick Schuchardt and Louis A. Meyer, trustees, in the foreclosure action, and to all liens except receiver's indebtedness, of which they were made to form a part. This contract and these orders very clearly stated and defined the obligations incurred by the receiver to the United States Rolling Stock Company for the hire and use of its cars. The amount to be paid may have exceeded for that use what was fair and just. But the judgment of the receiver was evidently different from that when the agreement was made, and the courts were therefore induced to sanction it. This was done with all requisite care and deliberation for the plaintiffs in the actions representing the holders of the bond and the railway company itself were represented at the time and practically assented to the orders made, and they clearly declare the obligations of the receiver. In terms the orders differed in some respects in their verbiage from those employed in the agreement. But those made use of were selected by the parties and sanctioned by the courts as properly expressing the effect of the agreement. And by the orders as they were framed and entered, the directions explicitly given were that the receiver should,

out of the earnings of the railway, first pay claims for labor and services, rentals of leased lines ordered by the courts to be paid, and interest on the Ohio mortgaged bonds, and secondly pay or redeem the certificates issued by him to the United States Rolling Stock Company for the use of its cars, on a par with his other operating expenses. In other words, that these certificates should be regarded by him as a portion of the operating expenses of the railway, and be paid as such and in the same manner, out of the funds received by him as receiver, after deducting from such funds the claims for labor and services, rental of leased lines ordered to be paid, and interest on the original mortgage upon that portion of the railway which was situated in the State of Ohio. The direction was clear and explicit, and it gave the certificates a preference in the order and right of payment both to expenses of permanent improvements and those required to keep up the organization of the railway company. In fact nothing could be deducted from the funds received by the receiver but the three precedent classes of demands mentioned in the order, before these certificates were entitled to participate in the distribution and division of the residue of these funds. And the obligation to make such payment was shown by the certificates themselves and the copies of the orders attached to them, which at the time when the application in this proceeding was made were in arrear to the extent of upwards of $280,000. As the case has been presented the United States Rolling Stock Company is entitled to the order applied for, to the effect that in future the receiver shall redeem these certificates so far as that can be done by applying to that object the funds remaining in his hands as receiver after the payment of claims for labor or services, the rental of leased lines ordered to be paid and interest on the Ohio first mortgage, in like manner as the other operating expenses of the railway shall be paid.

It has been maintained that this will prove impracticable, but the facts disclosed by the papers in the case do not warrant that conclusion; and if it should be the contract and the

orders confirming it cannot, for that reason, be wholly disregarded. Both have imposed this obligation upon him with his own consent and the assent of the trustees representing the bondholders and that of the railway company; while these orders remain in force they must, so far as that may be practicable be complied with. If that should prove to be indiscreet or injudicious in the judgment of the receiver, or in the efficient management of the affairs of the railway, he cannot merely on that account direct the funds made applicable by the orders to this object to other purposes. The avenue for relief in such emergency will not be by an open disregard of the terms of these orders, but in an application for such modification of them as will permit the use of such portions of the earnings as may appear to be necessary to the promotion of other objects. And as they now have become otherwise bound and hypothecated, that could only be done upon notice to the Rolling Stock Company, the party to be affected by such a proceeding, for the rule has become perfectly well settled that no party can be prejudiced in any of his or its rights without first being given an opportunity to be heard upon the subject. As the case now stands the application made, to the extent already suggested, must be allowed to prevail.